IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MAGALI MARTINEZ, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CAPSTONE RESTAURANT GROUP, LLC; and SUMMIT RESTAURANT HOLDINGS, LLC

    Defendants

---

**COLLECTIVE ACTION COMPLAINT**

---

Plaintiff Magali Martinez ("Martinez" or "Plaintiff") files this Collective Action Complaint against Defendants, Capstone Restaurant Group, LLC ("Capstone") and Summit Restaurant Holdings, LLC ("Summit") (collectively, "Defendants"), seeking all relief available under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") on behalf of herself and all current and former "Assistant Managers" ("AMs"), however variously titled, employed by Defendants anywhere in the United States during the relevant time period. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of herself and similarly situated current and former AMs to recover unpaid overtime pursuant to the FLSA. Defendants violated the FLSA by failing to pay its AMs overtime compensation for the hours they worked over forty (40) in one or more workweeks because Defendants classify them as exempt from overtime.

1

2. Defendants employ AMs in approximately 300 franchised "Hardee's" and "Carl's Jr" branded restaurants across the United States, including in Colorado, Florida, Georgia, Illinois, Iowa, Kansas, Missouri, Montana, Pennsylvania, South Carolina, Tennessee, Virginia, West Virginia, and Wyoming. Although Defendants consider their AMs to be "managers," AMs are not responsible for true management functions. To the contrary, AMs spend the vast majority of their time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

3. AMs report to General Managers who, in turn, report to district and other supervisory personnel. General Managers are the highest level of management in Defendants' "Hardee's" franchised restaurants.

4. AMs are classified by Defendants as exempt from overtime, even though their duties do not fall within any of the exemptions under federal or state overtime laws.

5. As alleged herein, Plaintiff and all other similarly situated AMs were required to work more than forty (40) hours in a workweek while employed by Defendants in order to complete their job duties. However, in accordance with Defendants' policy, pattern, and/or practice, they were misclassified as exempt from overtime compensation and were not paid at the mandated rate of time-and-one-half for all hours worked in excess of forty (40) in a work week.

6. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of herself and all persons who are or were formerly employed by Defendants in the United States during the relevant time period as AMs, and individuals holding comparable salaried positions with different titles (the "AM Collective").

7. Defendants' systematic failure and refusal to pay Plaintiff and all other similarly

situated AMs for all hours worked over forty (40) in a workweek violates the FLSA.

## THE PARTIES

*Plaintiff Magali Martinez*

8. Martinez resides in Calhoun, Georgia. Between approximately May 2018 and March 2019, Martinez was employed by Defendants as an AM at a "Hardee's" restaurant located in Calhoun, Georgia.

9. Throughout her employment as a AM with Defendants, Martinez was scheduled to work at least 50 hours each week, though she worked routinely more. On average, during each week of her employment with Defendants, Martinez worked approximately 50 to 60 hours, including during the weeks leading up to, and of, Easter, Thanksgiving, and Christmas in 2016, 2017, and 2018.

10. Martinez spent the vast majority of her time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

11. The work Martinez performed was at the direction, and for the benefit, of Defendants.

12. Pursuant to Defendants' policy, pattern or practice of classifying AMs as exempt from overtime, Martinez was not paid premium overtime compensation for all hours worked over forty (40) in a workweek.

13. Plaintiff has consented to join this action. *See* Exhibit A.

*Defendant Capstone Restaurant Group, LLC*

14. Capstone Restaurant Group, LLC is a Colorado corporation with its principal place of business located at 7490 Clubhouse Road, Boulder, Colorado 80301.

15. Capstone owns and operates approximately 300 franchised "Hardee's" and "Carl's Jr" branded restaurants. *See* https://capstonerestaurants.com/about-us/ (last accessed April 10, 2020).

16. At all relevant times, Capstone employed or acted in the interest of an employer towards Plaintiff and other similarly situated current and former AMs and, among other things, maintained control, oversight and direction over Plaintiff and other AMs, including with respect to timekeeping, payroll and other employment practices that applied to them.

17. Capstone applies the same employment policies, practices, and procedures to all AMs employed in its restaurants nationwide.

18. Capstone is a covered employer within the meaning of the FLSA because, among other things, it employs individuals, including Plaintiff, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate commerce.

19. Together with Defendant Summit Restaurant Holdings, LLC, Capstone employed (or acted in the interest of an employer towards) Plaintiff and the AM Collective and (directly or indirectly, jointly or severally) controlled and directed the terms of their employment and compensation.

20. Upon information and belief, Capstone operated in concert and together through related activities with Summit Restaurant Holdings, LLC, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA.

21. As Plaintiff's employer, Capstone and Summit Restaurant Holdings, LLC jointly

had the power to, and did, control the terms and conditions of Plaintiff's employment, as described herein, including the terms and conditions relating to Plaintiff's claims.

22. Based on the aforementioned and the detailed allegations contained herein, Capstone jointly employed Plaintiff with Summit Restaurant Holdings, LLC.

23. At all relevant time, Capstone has had gross revenues exceeding $500,000.00.

***Defendant Summit Restaurant Holdings, LLC***

24. Summit Restaurant Holdings, LLC is a Delaware corporation with its principal place of business located at 7490 Clubhouse Road, Boulder, Colorado 80301. Upon information and belief, Summit is owned, controlled, and managed by the same individuals who own, control and manager Defendant Capstone Restaurant Group, LLC.

25. Together with Capstone Restaurant Group, LLC, Summit owns and operates approximately 300 franchised "Hardee's" and "Carl's Jr" branded restaurants. *See* https://capstonerestaurants.com/about-us/ (last accessed April 10, 2020).

26. At all relevant times, Summit employed or acted in the interest of an employer towards Plaintiff and other similarly situated current and former AMs and, among other things, maintained control, oversight and direction over Plaintiff and other AMs, including with respect to timekeeping, payroll and other employment practices that applied to them.

27. Summit applies the same employment policies, practices, and procedures to all AMs nationwide.

28. Summit is a covered employer within the meaning of the FLSA because, among other things, it employs individuals, including Plaintiff, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate

commerce.

29. Together with Defendant Capstone Restaurant Group, LLC, Summit employed (or acted in the interest of an employer towards) Plaintiff and the AM Collective and (directly or indirectly, jointly or severally) controlled and directed the terms of their employment and compensation.

30. Upon information and belief, Summit operated in concert and together through related activities with Capstone Restaurant Group, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA.

31. As Plaintiff's employer, Capstone Restaurant Group, LLC and Summit jointly had the power to, and did, control the terms and conditions of Plaintiff's employment, as described herein, including the terms and conditions relating to Plaintiff's claims.

32. Based on the aforementioned and the detailed allegations contained herein, Summit jointly employed Plaintiff with Capstone Restaurant Group, LLC.

33. At all relevant time, Summit has had gross revenues exceeding $500,000.00.

**JURISDICTION AND VENUE**

34. This Court has original subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

35. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

36. This Court has personal jurisdiction over Defendants because they do business in Colorado and in this District.

37.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to the claims in this Collective Action Complaint occurred within this District and because Defendants reside in this District.

## JOINT-EMPLOYER ALLEGATIONS

38.     Based on the aforementioned and below allegations, Defendants Capstone and Summit are so closely associated and intermingled that the actions of one can be imputed to the other and, as a result, they jointly employed Plaintiff and the AM Collective.

39.     For example, Defendants all have the same corporate office in Boulder, Colorado; the same website; the same executives; and the same payroll and internal portal systems.

40.     First, Defendants' corporate address is 7490 Clubhouse Road, Boulder, Colorado 80301.  This is the same address that is reflected on Defendants' website.  *See* https://capstonerestaurants.com (last accessed April 10, 2020).

41.     *Second*, Defendants' website does not differentiate between either Capstone or Summit.  To the contrary, it reflects that Defendants are intertwined, referring only to "Capstone Restaurant Group" (*id.*), and identifies the hundreds of nationwide locations of its restaurants (including those in both Colorado where Defendants are headquartered and Calhoun, GA where Plaintiff worked)."  See https://capstonerestaurants.com/locations (last accessed April 10, 2020).

42.     Defendants' website also advertises "Careers" at Capstone, including hourly and management jobs at "Capstone Restaurant Group."  *See* https://nowhiring.com/apply/ (last accessed April 10, 2020).  Defendants' website states that "[p]eople are what drives the Capstone Restaurant Group;" "the Capstone Restaurant Group strives to reach the top of the restaurant and hospitality industry – the "Capstone""; "[w]ithout good people, we will not succeed"; "[w]e are always searching for talented team members ..."; and "[w]e offer a variety of benefits starting at

the entry level crew member position." *Id*. Defendants' website also refers to employees "join[ing] the Capstone Restaurant Group." *Id*.

43. Also, as indicated in the below excerpt taken from Defendants' website, Defendants' job postings refer to employment with Capstone Restaurant Group, LLC, including for Assistant Manager positions in restaurants located in Georgia (where Plaintiff worked), and Defendants admit that successful candidates will be employed by Capstone Restaurant Group, LLC. *See* https://nowhiring.com/apply/job-details/34957062 (last accessed April 10, 2020).

4/9/2020     Hardee's Restaurant Assistant Manager Job in DeKalb, GA | Capstone

Back                                              Search Jobs

**Restaurant Assistant Manager**
2516 Bouldercrest Drive Atlanta GA
Full-time

*Capstone Restaurant Group is an equal opportunity employer.*

I understand and acknowledge that Capstone Restaurant Group is an independently owned and operated franchisee of Carl's Jr. Restaurants LLC and Hardee's Restaurants LLC and, if I am hired, Capstone Restaurant Group will be my employer, not Carl's Jr. Restaurants or Hardee's Restaurants. Further I understand and acknowledge that Capstone Restaurant Group LLC is not acting as an agent for Carl's Jr. Restaurants, Hardee's Restaurants or any of its affiliates.

44. Capstone also advertises its restaurant operations on, among other things, LinkedIn https://www.linkedin.com/company/capstone-restaurants (last accessed April 10, 2020).

45. *Third*, both Capstone and its executives hold themselves out to the world as working for Capstone Restaurant Group. *See* e.g., https://capstonerestaurants.com/bobby-medlen, last accessed April 10, 2020 (Capstone website biography for operating partner Bobby Medlen) and https://www.linkedin.com/in/bobby-medlen-b370817, last accessed April 10, 2020 (Mr.

8

Medlen's LinkedIn biography where he describes his position as "Operating Partner & COO" for "Capstone Restaurant Group" and his job as being "[r]esponsible for operations of 143 restaurants in 9 states. Overall Capstone Restaurant Group operates 292 restaurants in 16 states"); https://www.linkedin.com/in/toddpahl, last accessed April 10, 2020 (LinkedIn profile for Todd Pahl reflecting his job title as "President, Partner and CFO" at "Capstone Restaurant Group" and stating that Capstone has "over 300 Hardee's and Carl's Jr franchises in 16 states, with our main office in Boulder, CO"); https://www.linkedin.com/in/jeffreymannion, last accessed April 10, 2020 (LinkedIn profile for Jeffrey Mannion reflecting his job title as "Regional Director of Operations" at "Capstone Restaurant Group"); and https://www.linkedin.com/in/randy-rippetoe-95515396, last accessed April 10, 2020 (LinkedIn profile for Randy Rippetoe reflecting his job title as "Regional Vice President" at "Capstone Restaurant Group").

46. *Fourth*, Defendants use the same payroll and records provider, "Paylocity," for, among other things, maintenance, distribution and storage of employees' payroll and W-2 records. *See* https://capstonerestaurants.com/employees, last accessed April 10, 2020. Defendants also use the same internal portal, called "CapNet," for the "storage of documents, forms, policies and procedures." *Id*.

47. Accordingly, and upon information and belief, Capstone required or permitted Summit to use and share its corporate offices, website, executive and operations staff, and payroll and internal portal systems for their nationwide restaurant operations, including with respect to the employment of Plaintiff and the members of the putative AM Collective.

48. Upon information and belief, Defendants jointly orchestrated and directed the hiring of Plaintiff and the members of the putative AM Collective, as evidenced by, among other

9

things, the integration of their compensation and payroll information provider (as described above).

49. Upon information and belief, Defendants jointly orchestrated and directed the discipline, firing and supervision of Plaintiff and the members of the putative AM Collective, including, with respect to Defendant Summit Restaurant Holdings, LLC, those who worked at stores located in other states.

50. As closely associated and intermingled entities, upon information and belief Defendants required or permitted Plaintiff and the members of the putative AM Collective to hold themselves out to the world as employees of Defendants.

51. Upon information and belief, Plaintiff's job duties and those of the members of the putative AM Collective, as detailed above and below, were assigned and monitored by, among others, Defendants' corporate personnel, such that Capstone has significant control over the employment conditions of Plaintiff and the members of the putative AM Collective.

52. In addition, upon information and belief, Messrs. Pahl, Medlen, Mannion, and Rippetoe assigned and monitored the work of Plaintiff and the members of the putative AM Collective, such that Capstone has significant control over their employment conditions.

53. Further, upon information and belief, Defendants dictated or acquiesced to Plaintiff and the members of the putative AM Collective not receiving overtime compensation for all hours worked in excess of forty (40) in a workweek.

54. Based on the facts alleged herein, Defendants exerted significant control over Plaintiff and the members of the putative AM Collective.

55. Accordingly, Defendants were employers for purposes of the FLSA because they acted directly and indirectly in the interest of an employer in relation to Plaintiff and the members

of the putative AM Collective, as described herein, including in connection with the following: their hiring; the terms and conditions of their employment, including compensation and method of payment; the assignment and supervision of job duties to them; and the creation and maintenance of personnel-related records, such as paystubs and W-2s.

## GENERAL FACTUAL ALLEGATIONS

56. Capstone is a private Colorado corporation, with its corporate headquarters in Boulder, Colorado.

57. According to its website, Capstone is an independent franchisee in the fast-food industry whose "focus is on Hardee's and Carls Jr." where they own and operate "almost 300 restaurants." *See* https://capstonerestaurants.com/about-us/ (last accessed April 10, 2020).

58. Summit is a private Delaware corporation with its corporate headquarters located in Boulder, Colorado. Upon information and belief, Summit is a wholly owned subsidiary of Capstone and shares the same corporate headquarters.

59. Upon information and belief, Defendants have employed thousands of individuals to work at its restaurants during the relevant time period, of which several hundred are believed to have been AMs.

60. Defendants maintain strict control, oversight, and discretion over the operation of its restaurants, including its employment practices with respect to Plaintiff and the members of the putative AM Collective.

61. Plaintiff's and the members of the putative AM Collective's work as AMs was performed in the normal course of Defendants' business and was integrated into it.

62. Consistent with Defendants' policy, pattern and/or practice, Plaintiff and the members of the putative AM Collective worked in excess of forty (40) hours per workweek without being paid overtime compensation.

63. All of the work that Plaintiff and the members of the putative AM Collective performed has been assigned by Defendants, who are aware of the work they performed. This work required little skill and no capital investment. Nor did it include managerial responsibilities, or the exercise of meaningful independent judgment and discretion.

64. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendants classify all AMs as exempt from the overtime provisions of the FLSA.

65. The primary job duties of Plaintiff and the members of the putative AM Collective did not include hiring, firing, disciplining, or directing the work of other employees.

66. The primary job duties of Plaintiff and the members of the putative AM Collective did not materially differ from the job duties of non-exempt hourly paid employees.

67. The primary job duties of Plaintiff and the members of the putative AM Collective did not include the exercise of meaningful independent discretion with respect to their duties.

68. The primary job duties of Plaintiff and the members of the putative AM Collective were manual and/or clerical in nature. The performance of manual and/or clerical labor occupied the majority of the working hours of Plaintiff and the members of the putative AM Collective.

69. Plaintiff and the members of the putative AM Collective are similarly situated in that they have substantially similar job duties and are subject to Capstone's common compensation policies, patterns, and/or practices.

70. Upon information and belief, Capstone did not perform a person-by-person analysis of Plaintiff's and the members of the putative AM Collective's job duties when making the

decision to classify AMs as exempt from overtime under the FLSA.

71. Due to the foregoing, Defendants' failure to pay overtime wages for work performed by Plaintiff and the members of the putative AM Collective in excess of forty (40) hours per week was willful.

72. The work performed by Plaintiff and the members of the putative AM Collective constitutes compensable work time under the FLSA and was not preliminary, postliminary or *de minimis*.

73. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

74. Plaintiff brings the First Cause of Action, 29 U.S.C. § 216(b), on behalf of herself and the AM Collective.

75. At all relevant times, Plaintiff and the members of the putative AM Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

76. Defendants are employers of Plaintiff and the members of the putative AM Collective and are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

77. At all relevant times, Plaintiff and the members of the putative AM Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

78. Defendants have failed to pay Plaintiff and the members of the putative AM Collective overtime compensation to which they are entitled under the FLSA.

79. Defendants have failed to keep accurate records of time worked by Plaintiff and the members of the putative AM Collective.

80. Defendant is liable under the FLSA for, among other things, failing to properly compensate Plaintiff and the members of the putative AM Collective.

81. Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the putative AM Collective were not paid overtime compensation when they worked beyond forty (40) hours in a workweek.

82. All of the work that Plaintiff and the members of the putative AM Collective performed has been assigned by Defendants, and/or Defendants were aware of such work.

83. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the putative AM Collective. This policy and pattern or practice includes, but is not limited to:

    (a) willfully failing to pay Plaintiff and the members of the putative AM Collective premium overtime wages for hours that they worked in excess of forty (40) hours per workweek;

    (b) willfully misclassifying Plaintiff and the members of the putative AM Collective as exempt from the overtime protections of the FLSA; and

    (c) willfully failing to record all of the time that its employees, including Plaintiff and the members of the putative AM Collective, worked for the benefit of Defendants.

84. Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the members of the putative AM Collective overtime compensation for all hours worked in excess of forty (40) in a workweek.

85. Plaintiff and the members of the putative AM Collective perform or performed the same primary duties.

86. Defendants' unlawful conduct has been widespread, repeated, and consistent.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act: Unpaid Overtime Wages**
**(Brought on Behalf of Plaintiffs and the AM Collective)**

87. Plaintiff realleges and incorporate by reference the above allegations.

88. Defendants have engaged in a widespread policy, pattern or practice of violating the FLSA in regard to Plaintiff and the members of the putative AM Collective, as detailed in this Collective Action Complaint.

89. Upon information and belief, Defendants established labor budgets to cover labor costs for the restaurants in which Plaintiff and the members of the putative AM Collective worked. However, Defendants did not provide sufficient money in the labor budgets to cover all hours needed to complete the necessary non-exempt tasks in each restaurant.

90. Defendants knew or recklessly disregarded the fact that their underfunding of restaurant labor budgets resulted in Plaintiff and the members of the putative AM Collective (who were not paid overtime) working more than forty (40) hours in a workweek without receiving any overtime compensation. This allowed Defendants to avoid paying additional wages (including overtime) to the non-exempt, restaurant-level employees.

91. Because Defendants underfunded restaurant labor budgets, which in turn limited the amount of money available to pay non-exempt employees to perform manual and customer service tasks, AMs were required to – and did – perform these non-exempt tasks.

92. In fact, the performance of non-management work was the primary duty of Plaintiff and the members of the AM Collective. These primary duties included serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

93. Defendants knew, by virtue of the fact that its upper level management employees

(as its authorized agents) actually saw Plaintiff and the members of the AM Collective primarily perform manual labor and non-exempt duties, that Plaintiff and other similarly situated AMs were not performing activities that complied with any FLSA exemption.  Inasmuch as Defendants are substantial corporate entities aware of their obligations under the FLSA, they acted willfully or recklessly in failing to classify Plaintiff and other similarly situated AMs as non-exempt employees.

94. Upon information and belief, and as part of their regular business practices, Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the putative AM Collective. This policy and pattern or practice includes but it is not limited to:

(a) willfully misclassifying Plaintiff and the members of the putative AM Collective as exempt from the requirements of the FLSA;

(b) willfully failing to pay Plaintiff and the members of the AM Collective overtime wages for all hours they worked in excess of forty (40) hours per week; and

(c) willfully failing to provide enough money in its restaurant-level labor budgets.

95. Defendants' unlawful conduct, as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to Defendants' centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

96. As further evidence of its willful or reckless failure to classify Plaintiff and the members of the AM Collective as non-exempt employees, Defendants have uniformly failed to: (a) accurately track or record actual hours worked by Plaintiff and the members of the putative AM Collective; and (b) provide Plaintiff and the members of the putative AM Collective with a method to accurately record the hours they actually worked.

97. Defendants did not make a good faith effort to comply with the FLSA with respect to their timekeeping and compensation of Plaintiff and the members of the putative AM Collective.

98. Defendants were or should have been aware that the FLSA required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty (40) per week.

99. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the members of the putative AM Collective for all hours worked in excess of forty (40) in a workweek.

100. Upon information and belief, there are potentially hundreds of similarly situated current and former AMs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the putative AM Collective, pursuant to 29 U.S.C. § 216(b).

101. The members of the putative AM Collective are known to Defendants, are readily identifiable, and can be located through Defendants' records.

102. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be further extended or tolled by agreement, equity or operation of law.

103. As a result of Defendants' willful violations of the FLSA, Plaintiff and the members of the putative AM Collective have suffered damages by being denied overtime compensation in accordance with the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative AM Collective, prays for the following relief:

1. Designation of this action as an FLSA collective action on behalf of Plaintiff and the members of the putative AM Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the AM Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

2. An award of unpaid overtime compensation for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA using the following common methodology for calculating damages: ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours Worked x 1.5;

3. An award of liquidated damages under the FLSA as a result of Defendants' willful failure to pay for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay;

4. An award of damages representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

5. An award of service payment to Plaintiff;

6. An award of pre-judgment and post-judgment interest, where applicable;

7. An award of costs and expenses of this action, together with reasonable attorneys' and expert fees to Plaintiff's counsel pursuant to the FLSA;

8. An injunction requiring Defendants to cease their practice of violating the FLSA in the future;

9. Issuance of a declaratory judgment that the practices complained of in this Collective Action Complaint are unlawful and/or willful under the FLSA; and

10. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Collective Action Complaint.

Dated: April 10, 2020

s/ Jason Conway
Jason Conway
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Daniel C. Levin
**LEVIN, SEDRAN & BERMAN LLP**
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone: (215) 592-1000
Fax: (215) 592-4663
dlevin@lfsblaw.com

*Attorneys for Plaintiff and the Putative AM Collective*